FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURA B., | NO:  1:21-CV-03049-LRS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 16, 17.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by Attorney Mark Bunch.  Defendant is

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

represented by Special Assistant United States Attorney Frederick Fripps.  The

Court has reviewed the administrative record, the parties' completed briefing, and

is fully informed.  For the reasons discussed below, the Court **GRANTS**

Defendant's Motion for Summary Judgment, ECF No. 17, and **DENIES** Plaintiff's

Motion for Summary Judgment, ECF No. 16.

### JURISDICTION

Plaintiff Laura B.[2] protectively filed an application for Disability Insurance

Benefits (DIB) on May 15, 2018, Tr. 69, alleging an onset date of July 1, 2016, Tr.

179, due to blindness/low vision, posttraumatic stress disorder (PTSD), major

depression, bipolar disorder, diabetes, high blood pressure, and anxiety, Tr. 216.

Plaintiff's application was denied initially, Tr. 105-11, and upon reconsideration,

Tr. 113-19.  A hearing before Administrative Law Judge Virginia Robinson

("ALJ") was conducted on May 26, 2020.  Tr. 39-68.  Plaintiff was represented by

counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of

vocational expert Thomas Polsin.  *Id*.  The ALJ entered an unfavorable decision on

November 4, 2020.  Tr. 20-33.  The Appeals Council denied review on February 5,

2021.  Tr. 1-6.  Therefore, the ALJ's November 4, 2020 decision became the final

decision of the Commissioner.  The matter is now before this Court pursuant to 42

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER ~ 2

U.S.C. § 405(g).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 57 years old at the alleged onset date.  Tr. 179.  The highest grade Plaintiff completed was the eleventh grade.  Tr. 217.  At application, Plaintiff reported that her work history included jobs as a dispatcher and chief deputy clerk.  Tr. 217, 253.  She reported that she stopped working on July 1, 2017, for reasons other than her impairments.  Tr. 217.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from the alleged onset date, July 1, 2016, through December 31, 2018.  Tr. 24.  The ALJ then found that Plaintiff had not engaged in substantial gainful activity since January 1, 2019.  Tr. 24.

At step two, the ALJ found that Plaintiff had the following severe impairments: depression; anxiety; PTSD; obesity; and chronic lumbar strain.  Tr. 24.

At step three, the ALJ found that Plaintiff's impairments or combinations of impairments did not meet or equal the severity of one of the listed impairments.  Tr. 24.

The ALJ then found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following nonexertional limitations:

> she can frequently climb ramps and stairs.  She can occasionally climb ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards such as working at

unprotected heights.  She is limited to simple, routine tasks in a routine work environment with simple, work-related decisions with brief, superficial interaction with coworkers, supervisors, and the public.  She can accept training and routine supervision.

Tr. 26.  At step four, the ALJ identified Plaintiff's past relevant work as tallier, administrative assistant, and home health aide and found she could not perform this past relevant work.  Tr. 31.

At step five, the ALJ found that if Plaintiff stopped the substance use, considering her age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including kitchen helper and laundry worker.  Tr. 32.  Based on this, the ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.  Tr. 33.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB under Title II.  ECF No. 16.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ's RFC determination was supported by substantial evidence;

2.  Whether the ALJ's step five determination is supported by substantial evidence;

ORDER ~ 8

3. Whether the ALJ met her burden at step five; and

4. Whether the ALJ's unfavorable determination is supported by substantial evidence.

## DISCUSSION

### 1.    RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. This argument is based on the ALJ's erroneous treatment of Plaintiff's symptom statements and the opinion of Karen Mansfield-Blair, Ph.D. ECF No. 16 at 6-10.

### A.    Plaintiff's Symptom Statements

First, Plaintiff argues that the ALJ should have fully credited her symptom statements. ECF No. 16 at 7-9.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "The claimant is not required to show that [her] impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*.

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ stated that Plaintiff's statements about intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 27. The ALJ gave three reasons for rejecting Plaintiff's symptom statements: (1) that records show that Plaintiff experienced improvement with treatment; (2) objective evidence did not support the Plaintiff's allegations; and (3) Plaintiff's activities were inconsistent with a disabling impairment. Tr. 27-29.

Plaintiff argued that any improvement or inconsistencies in the medical evidence represents the natural waxing and waning of symptoms. ECF No. 16 at 7-8. However, when a claimant contends the "ALJ failed to recognize the inherently variable nature of mental illness, the court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Here, the ALJ summarized the medical evidence and found that despite her allegations, Plaintiff's symptoms improved with counseling and medications, but Plaintiff failed to continue this treatment. Tr. 27-29. Furthermore, the ALJ cited to multiple records showing fair results on mental status examinations. Tr. 27-29. Therefore, the

Court will not disturb the ALJ's determination.

The ALJ also rejected Plaintiff's symptom reports because her reported activities were inconsistent with her allegations. Tr. 27-29. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, Plaintiff worked above substantial gainful activity during the period in which she alleged disability. Plaintiff earned above substantial gainful activity levels in 2016, 2017, and 2018. Tr. 44-47, 187. Additionally, the ALJ found that despite alleging disability, Plaintiff actively sought employment while receiving unemployment, including service-oriented employment, which was inconsistent with her reported social limitations. Tr. 29-30. Plaintiff testified that she received unemployment benefits and reported looking for work in order to continue receiving benefits. Tr. 48-49, 209-11. This is inconsistent with her allegations that she was disabled starting in July of 2016.

Furthermore, The ALJ found that Plaintiff's reported back pain was inconsistent with riding horses, riding bikes, and going on lengthy car rides. Tr. 29. The Court acknowledges that the Ninth Circuit has warned ALJs against using

simple household activities against a person when evaluating their testimony:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, considering Plaintiff rode her horse daily for at least an hour, Tr. 51, and took extensive multi-state trips, Tr. 50, the Court agrees with the ALJ that these activities are inconsistent with her reported symptoms. Therefore, the Court will not disturb the ALJ's determination.

### B.    Karen Mansfield-Blair, Ph.D.

Plaintiff challenges the ALJ's treatment of the opinion of Karen Mansfield-Blair, Ph.D. ECF No. 16 at 8-9.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources. 20 C.F.R. § 404.1520c(a). Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative

medical finding, regardless of whether the medical source is an Acceptable

Medical Source.  20 C.F.R. § 404.1520c(c).  The ALJ is required to consider

multiple factors, including supportability, consistency, the source's relationship

with the claimant, any specialization of the source, and other factors (such as the

source's familiarity with other evidence in the file or an understanding of Social

Security's disability program).  *Id.*  The regulations emphasize that the

supportability and consistency of the opinion are the most important factors, and

the ALJ must articulate how he considered those factors in determining the

persuasiveness of each medical opinion or prior administrative medical finding.  20

C.F.R. § 404.1520c(b).  The ALJ may explain how he considered the other factors,

but is not required to do so, except in cases where two or more opinions are equally

well-supported and consistent with the record.  *Id.*

    Supportability and consistency are further explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c).

    On December 18, 2018, Dr. Mansfield-Blair completed a consultative

evaluation of Plaintiff.  Tr. 984-99.  She diagnosed Plaintiff with major depressive

disorder, PTSD, and rule-out borderline personality disorder.  Tr. 897-98.  She

found that Plaintiff would not have difficulties performing simple and repetitive

tasks, but would have difficulty performing detailed and complex tasks.  Tr. 898.

She opined that Plaintiff would not have difficulty accepting instruction from

supervisors, interacting with coworkers, or the public.  Tr. 898.  She stated that

Plaintiff would have difficulty performing activities on a consistent basis without

special or additional instruction and maintaining regular attendance and completing

a normal workday/workweek without interruptions from a psychiatric condition.

Tr. 898.  She stated that Plaintiff would have difficulty dealing with usual stress

encountered in the workplace.  Tr. 898-99.

The ALJ found the opinion to be partially persuasive, but found that Dr.

Mansfield-Blair's opinion that Plaintiff would have difficulty maintaining regular

attendance and dealing with usual stressors in the workplaces to be unpersuasive.

Tr. 30.  The ALJ provided the following rationale for rejecting this portion of the

opinion:

> The claimant has reported that her mental health impairments are
> longstanding yet she was able to work at levels in excess of substantial
> gainful activity for part of the time since her alleged onset date and
> subsequently reported that she actively sought employment while
> receiving unemployment benefits.  Furthermore, this portion of the
> opinion is inconsistent with the claimant's ability to go on multiple long
> road trips to visit friends and her reported improvement in her
> symptoms with mental health treatment.

Tr. 30-31.  While Plaintiff argues that her statements to providers support the opinion, ECF No. 16 at 8-9, the ALJ's conclusions are not rebuffed by other evidence noted, nor arguments made, in her briefing.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008); *Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).  The Court will not disturb the ALJ's treatment of the opinion.

**2.    Step Five**

Plaintiff challenges the ALJ's step five determination based on an incomplete hypothetical to the vocational expert.  ECF No. 16 at 10.  This argument is derivative of the Plaintiff's challenge to the RFC determination, which was unsuccessful.  Therefore, the Court will not disturb the ALJ's step five determination.

**3.    The ALJ's Burden**

Plaintiff also challenges the ALJ's step five determination by asserting that she failed to meet her burden relying on *Maxwell v. Saul*, 971 F.3d 1128 (9th Cir. 2020).  ECF No. 16 at 11.

At step five of the sequential process, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran*, 700 F.3d at 389.  The Commissioner may meet her

burden either "(1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1099. The Medical–Vocational Guidelines, or "the grids," are a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* at 1101. Based on the claimant's functional capacity, age, education, and work experience, the grids direct a determination that the claimant is either "disabled" or "not disabled." *Id.* "Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006), *as amended* (Nov. 7, 2006).

The Court in *Maxwell* addressed the girds and the definition of a "significant range of work" under Rule 202.00(c). Rule 202.00(c) provides:

> [F]or individuals of advanced age who can no longer perform vocationally relevant past work and . . . who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, . . . the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(c). Therefore, if a claimant's skills are not readily transferable to a "significant range of . . . work," the ALJ must make a finding of disabled. Rule 202.00(c) recognizes "that the most difficult problem that a claimant such as [Maxwell] faces is that of adapting to a new job." *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989).

Here, the ALJ found that the transferability of Plaintiff's skills were not material because the grids, used as a framework, supported a finding that Plaintiff was "not disabled." Tr. 32. The ALJ's determination is correct. The claimant in *Maxwell* was limited to a range of light work, which is dictated by Rule 202.00. 971 F.3d at 1129. In this case, Plaintiff was limited to a range of medium work, Tr. 26, which is dictated by Rule 203.00. Rule 203.00(b) provides:

> The functional capacity to perform medium work represents such substantial work capacity at even the unskilled level that a finding of disability is ordinarily not warranted in cases where a severely impaired person retains the functional capacity to perform medium work. Even the adversity of advanced age (55 or over) and a work history of unskilled work may be offset by the substantial work capacity represented by the functional capacity to perform medium work. . .

20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 203.00(b). Therefore, Plaintiff's reliance on *Maxwell* is misplaced.

Furthermore, even if Plaintiff intended to argue that the occupations identified by the ALJ does not exist in "significant numbers in the national economy" that Plaintiff can perform, her argument cannot succeed. Once a claimant establishes that she cannot perform her past relevant work, it is the Commissioner's duty to establish that she can perform substantial gainful employment that exists in significant numbers in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 404.1566. Though there is not a bright-line for determining whether employment exists in significant numbers in the national economy, "[i]solated jobs that exist only in very limited numbers in

relatively few locations outside of the region where [a claimant] live[s] are not considered work which exists in [significant numbers in] the national economy." 20 C.F.R. § 404.1566(b). The Ninth Circuit has declined to find that there is a bright-line rule when determining the total number of jobs that is "significant." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (finding 25,000 national jobs significant). In *Gutierrez*, the Ninth Circuit found that 25,000 jobs was a "close call." *Id.* at 529. District courts in the Ninth Circuit have varied in their conclusions of what constitutes "significant." *Compare, e.g.*, *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (finding 12,300 national jobs significant) *and Evans v. Colvin*, No. ED CV 13-01500, 2014 WL 3845046, at *2– 3 (C.D. Cal. Aug. 4, 2014) (finding 6,200 national jobs significant) *with Baker v. Comm'r of Soc. Sec.*, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (finding 14,500 national jobs insignificant) *and Valencia v. Astrue*, No. C 11-06223, 2013 WL 1209353 at *18 (N.D. Cal. Mar. 25, 2013) (finding 14,082 national jobs insignificant).

Here, the ALJ found that Plaintiff could perform the requirements of the representative occupations of kitchen helper with 490,000 jobs in the national economy and laundry worker with 197,000 jobs in the national economy. Tr. 32. These numbers far exceed the close calls identified by the Ninth Circuit and other district courts. Therefore, the Plaintiff's challenge to step five fails.

///

**4.    ALJ's Unfavorable Decision**

Plaintiff's final challenge, that the ALJ's unfavorable determination was not supported by substantial evidence, is derivative of her prior challenges.  ECF No. 16 at 11.  In fact, Plaintiff failed to provide any argument under this heading.  *Id*. Since, Plaintiff did not succeed in her earlier challenges, this challenge also fails.

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 17, is

    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE** the file.

**DATED** February 24, 2022.

LONNY R. SUKO
Senior United States District Judge